UNITED STATES DISRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR CITIZENS NATIONAL BANK and RECEIVER FOR STRATEGIC CAPITAL BANK,<br><br>     Plaintiff,<br><br>  v.<br><br>BEAR STEARNS ASSET BACKED SECURITIES I LLC; THE BEAR STEARNS COMPANIES LLC.; J.P. MORGAN SECURITIES LLC.; CITICORP MORTGAGE SECURITIES, INC.; CITIMORTGAGE, INC.; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CREDIT SUISSE MANAGEMENT LLC; CREDIT SUISSE SECURITIES (USA) LLC; MERRILL LYNCH MORTGAGE INVESTORS, INC.; MERRILL LYNCH MORTGAGE CAPITAL INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; ALLY SECURITIES, LLC; DEUTSCHE BANK SECURITIES INC.; HSBC SECURITIES (USA) INC.; RBS SECURITIES INC.; and UBS SECURITIES LLC,<br><br>     Defendants. | No. 12 Civ. 4000 (LTS) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiff Federal Deposit Insurance Corporation as Receiver for Citizens National Bank (CNB) and as Receiver for Strategic Capital Bank (SCB) (collectively, FDIC) hereby responds to the Notice of Supplemental Authority filed by defendants on May 24, 2013. As explained below, none of the supplemental authority that defendants have submitted warrants dismissal of the amended complaint. Indeed, much of that authority further demonstrates why defendants' motion should be denied.

### A.  *FDIC as Receiver for Strategic Capital Bank v. J.P. Morgan Sec. LLC*, No. 12-CV-8415-MRP (C.D. Cal. Apr. 22, 2013)

The two-page order recently issued by Judge Pfaelzer in *FDIC as Receiver for Strategic Capital Bank v. J.P. Morgan Securities LLC*, No. 12-CV-8415-MRP (C.D. Cal. Apr. 22, 2013), adds nothing to the analysis here. That decision rests entirely on the court's prior order in a related case, which the FDIC has appealed, and which the parties already discussed in their briefs to this Court on defendants' motion to dismiss. The FDIC has explained why Judge Pfaelzer's rulings are contrary to the weight of authority generally and, in particular, from this Court. *See* Pl.'s Mem. Opp. Defs. Mot. to Dismiss the Am. Compl. at 6 n.4, 12 n.8 (discussing *FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin. Corp.*, No. 2:12-CV-4354-MRP (MANx), 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012)).

### B.  *Woori Bank v. Merrill Lynch*, No. 12 Civ. 3993 (VM), 2013 WL 449912 (S.D.N.Y. Feb. 6, 2013)

The decision in *Woori Bank v. Merrill Lynch*, No. 12 Civ. 3993 (VM), 2013 WL 449912 (S.D.N.Y. Feb. 6, 2013), is not relevant to defendants' motion for several reasons. First, in *Woori*, Judge Marrero applied Korean law to determine whether the statute of limitations on the plaintiff's claims had run. Under Korean law, the statute of

1

limitations "begins to run 'from the date on which the injured party or his agent by law becomes aware of such damage and of the identity of the person who caused it.'" *Woori*, 2013 WL 449912, at *4. That standard is materially different from the standard established by the Supreme Court in *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010), as applied by the Second Circuit. *See City of Pontiac Gen. Emps.' Ret. Fund v. MBIA, Inc.*, 637 F.3d 139, 175 (2d Cir. 2011); *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012) (holding that statute of limitations begins to run when reasonable plaintiff could have pleaded sufficient facts to state a claim that would survive motion to dismiss under Rule 12(b)(6)). Indeed, the *Woori* court expressly noted that difference in explaining why the available information about Merrill Lynch's practices was sufficient to put the plaintiff on notice of its claims under Korean law. *See Woori*, 2013 WL 449912, at *7 n.4 (distinguishing *Fed. Hous. Fin. Agency v. UBS Am. Inc.*, 858 F. Supp. 2d 308, 321 (S.D.N.Y. 2012), because it "dealt with the more exacting accrual standard applicable under the Securities Act, not the accrual standard that would be applicable to the present case under either New York or Korean law").

Second, in *Woori*, the court held only that the plaintiff was on notice of and had the practical ability to bring a claim against Merrill Lynch before May 18, 2009. *Woori*, 2013 WL 449912, at *5. That says nothing about whether CNB and SCB could have filed a well-pleaded complaint against Merrill Lynch by May 22, 2008, nearly a year earlier.

Third, all of the information to which the court pointed as demonstrating when a reasonable investor would have been on notice of its claims against Merrill Lynch either is irrelevant to the residential mortgage-backed securities (RMBS) claims asserted by the

2

FDIC or post-dated May 22, 2008, the limitations trigger date here. *See Woori*, 2013 WL 449912, at *4-5. That information focused on problems with mortgages issued by subprime lenders and a decline in the ratings of certain collateralized debt obligations (CDOs) sold by Merrill Lynch, including information that related specifically to the plaintiff's claims in that case. For example, the court pointed to an action filed against Merrill Lynch in October 2007, *which related to the particular CDO involved in the plaintiff's suit*, alleging that Merrill Lynch failed to fully disclose the exposure of certain CDOs to the subprime mortgage market. The FDIC's claims, in contrast, do not relate to the subprime mortgage market or to the Merrill Lynch CDOs discussed in *Woori*. Rather, they relate to Merrill Lynch's role as an underwriter of Alt-A RMBS. Although the court also pointed to other complaints that made allegations about Merrill Lynch's representations about mortgage underwriting standards, those were all filed in December 2008 or later, *i.e.*, well after May 22, 2008. *Woori*, 2013 WL 449912, at *4.

Fourth, in *Woori*, the plaintiff itself acknowledged that "the October 2007 'widespread write down of CDO ratings' – including the write down of specific CDO interests at issue here – began to expose the allegedly 'corrupt system of CDO ratings to Plaintiff." *Id*. at *4 (quoting plaintiff's complaint). Here, in contrast, as the FDIC explained in its opposition brief, 14 of the 19 certificates were not downgraded below investment grade until after May 22, 2008, and the remainder were downgraded only eight days before that. *See* Pl.'s Mem. Opp. Defs. Mot. to Dismiss Am. Compl. at 8-9.

### C. *Federal Housing Finance Agency v. UBS Americas, Inc.*, 712 F.3d 136 (2d Cir. 2013)

As the defendants acknowledge, the Second Circuit's recent decision in *Federal Housing Finance Agency v. UBS Americas, Inc*., 712 F.3d 136 (2d Cir. 2013), disposes of

3

their argument that the "extender provision" in 12 U.S.C. § 1821(d)(14) does not apply to the statute of repose in section 13 of the 1933 Act. Defendants therefore have withdrawn this argument. As a result, it is now undisputed that the FDIC's claims are timely under the three-year statute of repose.

### D. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Group PLC*, 709 F.3d 109 (2d Cir. 2013)

The Second Circuit's recent decision in *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group PLC*, 709 F.3d 109 (2d Cir. 2013), supports the FDIC's arguments against dismissal, not defendants' arguments in favor of dismissal.

First, the court's decision makes clear that the sort of disclaimers that defendants purport to rely on here cannot shield them from liability under the 1933 Act. *See, e.g., id.* at 125 (concluding that statements in prospectus supplements acknowledging that exceptions to underwriting guidelines occurred "did not cure the misstatements and omissions that the [plaintiff] alleges"); *id.* at 126 (concluding that risk disclosures in prospectus supplement did not render alleged misstatement of underwriting guidelines immaterial as a matter of law).

Second, the court's opinion shows that the same type of facts alleged by the FDIC here – credit downgrades, early payment defaults, and information about the practices of specific originators – are sufficient to state a claim that the prospectus supplements contained material misstatements about the underwriting standards applied by the originators of the underlying collateral. *See id*. at 121-123; Am. Compl. ¶¶ 89-124 & Items 87, 94-96 of Schedules 1-12.

The court's opinion does not, as defendants suggest, impose a pleading threshold for such claims. The Second Circuit made clear that, in upholding the plaintiff's

4

allegations, it was not "attempt[ing] to identify any 'minimum' that a plaintiff must plead in order to state a claim under §§ 11 & 12(a)(2) of the '33 Act based on offering documents' description of an underwriter's guidelines." *N.J. Carpenters*, 709 F.3d at 123 n.7. Thus, that the EPDs alleged in that case were "exceedingly high" or that the complaint included statements from former employees of the originator does not establish that a complaint containing allegations of a different kind or degree is insufficient to state a claim.

### E.  Affidavit from Employee of CoreLogic, Inc.

Finally, defendants submit as additional "authority" an affidavit submitted by a third party in an unrelated case in support of a motion to exclude expert testimony. The affidavit is from an employee of CoreLogic, Inc., the vendor of the automated valuation model (AVM) that the FDIC used to evaluate the truth of the statements made by the defendants in the prospectus supplements about loan-to-value (LTV) ratios and appraisals.

The Court should disregard the affidavit because it is material outside the pleadings that may not be considered on a motion to dismiss. On a motion under Rule 12(b)(6), a court may consider only those matters contained in the complaint, documents attached thereto or incorporated by reference, and matters of which the Court may take judicial notice. *Allen v. Westpoint-Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991).

The affidavit does not fall into any of these categories. It is not mentioned in the amended complaint, is not attached to the amended complaint, and is not incorporated by reference in the amended complaint.

Nor is the affidavit the proper subject of judicial notice. Judicial notice may be taken only of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The "facts" asserted in the affidavit are not "generally known," nor can they be "accurately and readily determined from sources" of unquestioned accuracy. To the contrary, they represent the views of one employee of CoreLogic about the appropriate uses of its product. Determining the accuracy of these statements would require discovery, the weighing of evidence, and determinations of credibility. For these reasons, courts routinely refuse to consider affidavits containing factual assertions on a motion to dismiss. *See, e.g., Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) ("There is no basis for the Court to consider the affidavits [offered by defendants] . . ., which are attached solely for the purpose of refuting the facts alleged in the complaint and would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss."); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 373 (S.D.N.Y. 1997) ("Reliance upon affidavits is improper in considering a Rule 12(b)(6) motion. . . . [T]his Court again finds it inappropriate to take judicial notice of a fact stated only in an affidavit."); *Whitley v. Westchester Cnty. Corr. Facility Admin.*, No. 97 Civ. 0420 (SS), 1997 WL 659100, at *2 (S.D.N.Y. Oct. 22, 1997) ("affidavits cannot be considered in a Rule 12(b)(6) motion").

Moreover, that the affidavit was filed in a state court proceeding makes no difference. Although a court may take judicial notice of a document filed in another court, it may do so only to establish *the fact that the document exists* or that the

statements contained therein were made, not for the truth of the matters asserted. *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *DeMasi v. Benefico*, 567 F. Supp. 2d 449, 457 n.6 (S.D.N.Y. 2008) ("We take judicial notice of the State court decisions to establish the fact of the litigation but we do not consider the Slingerland Affidavit and the documents attached for the truth of the matters asserted and therefore we do not consider them on a motion to dismiss."). Defendants here have offered the affidavit for the sole purpose of attempting to establish the truth of the statements made therein and thereby to refute the allegations of the amended complaint. As a result, the Court must disregard it. *Global Commc'ns*, 458 F.3d at 157.

In any event, even if the Court could consider the affidavit, it has no bearing on the sufficiency of the FDIC's allegations about appraisals and LTV ratios. To withstand defendants' motion to dismiss, the amended complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nothing in the affidavit shows that the results of an AVM analysis cannot raise a plausible inference that defendants' statements about appraisals and LTV ratios were untrue or misleading, which is all that the FDIC purports to use the AVM for. Rather, the affidavit addresses whether an expert or other professional should determine the value of a property by relying solely on an AVM. *See* Doty Aff. ¶ 3 ("Professionals in the real estate field should not, and I believe do not, rely solely on CoreLogic (or other)

7

AVMs to make reliable determinations of the reasonableness of value opinions offered by licensed or certified appraisers. . . . Our AVMs are not used to determine whether an appraiser actually inflated or deflated an opinion of value."). The FDIC is not asking the Court to determine the reasonableness or validity of the original appraisals based solely on the results of the CoreLogic AVM. The only issue before the Court is whether the FDIC's allegations, as derived from the results of the AVM, constitute plausible grounds to infer that the appraisals were inflated and the LTV ratios overstated and, thus, that the defendants' statements were untrue or misleading.

Finally, another judge in this District recently upheld the use of an AVM to support expert testimony *at trial* that the values of properties backing RMBS were overstated. *See Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, No. 11 Civ. 2375 (JSR), 2013 WL 440114, at *29-30 (S.D.N.Y. Feb. 15, 2013) (rejecting challenge to expert's use of AVM as "inherently unreliable," finding AVM "sufficiently reliable so as to appropriately underlie [expert's] analysis of the loan samples"). Judge Rakoff noted – as the FDIC has alleged here – that AVMs "are commonly relied upon in the field of underwriting" and that the defendant itself regularly used an AVM to validate appraisals. *Id.* at *30; *cf.* Am. Compl. ¶ 50. If an AVM is sufficiently reliable to support an expert's testimony at trial, it certainly is sufficient to support allegations in a complaint.

Dated: June 3, 2013

        Respectfully submitted,

        GRAIS & ELLSWORTH LLP

        By:      /s/ Mark B. Holton

        David J. Grais (DG 7118)
        Mark B. Holton (MH 4939)
        Kathryn E. Matthews (KN 0932)
        1211 Avenue of the Americas
        New York, New York 10036
        Phone: (212) 755-0100
        Fax: (212) 755-0052

        *Attorneys for Plaintiff the Federal Deposit Insurance Corporation as Receiver for Citizens National Bank and Receiver for Strategic Capital Bank*

## **CERTIFICATE OF SERVICE**

On the 31st day of May, 2013, the undersigned caused a true and correct copy of the foregoing to be served electronically on those parties requesting electronic service via the Court's ECF system.

      /s/ Kathryn E. Matthews
Kathryn E. Matthews