# Exhibit A

COPY

1                    REPORTER'S RECORD

2                  VOLUME 1 OF 1 VOLUME

3              COURT CAUSE NO. 2011-67305

4

5   FEDERAL DEPOSIT INSURANCE        )IN THE DISTRICT COURT
    CORPORATION AS RECEIVER          )
6   FOR FRANKLIN BANK, S.S.B.        )
                      *Plaintiff,*   )
7                                    )
    VS.                              )HARRIS COUNTY, TEXAS
8                                    )
    MORGAN STANLEY & COMPANY, LLC,   )
9   f/k/a MORGAN STANLEY & CO.INC.,  )
                      *Defendant.*   )151ST JUDICIAL DISTRICT
10

11

12

13        *****************************************

14            MOTION FOR RECONSIDERATION

15        *****************************************

16

17

18

19              On the 29th day of September, 2014, the

20   following proceedings came on to be heard in the

21   above-entitled and numbered cause before the Honorable

22   Mike Engelhart, Judge Presiding, held in Houston,

23   Harris County, Texas.

24              Proceedings reported by computer-aided

25   transcription/stenograph machine.

```
 1                    A P P E A R A N C E S

 2    Mr. Mark B. Holton
      GRAIS & ELLSWORTH LLP
 3    (admitted pro hac vice )
      1211 A venue of Americas
 4    New York, New York 10036
      Telephone: (212) 755-0100
 5    Facsimile: (212) 755-0052
      COUNSEL FOR PLAINTIFF
 6    FEDERAL DEPOSIT INSURANCE CORPORATION

 7    Mr. Dean D. Hunt
      dhunt@bakerlaw.com
 8    State Bar No. 10283220
      Ms. Farrell A. Hochmuth
 9    State Bar No. 24041107
      fhochmuth@bakerlaw.com
10    BAKER & HOSTETLER LLP
      811 Main Street, Suite 1100
11    Houston, Texas 77002
      Telephone: (713) 751-1600
12    Facsimile: (713) 751-1717
      COUNSEL FOR PLAINTIFF
13    FEDERAL DEPOSIT INSURANCE CORPORATION
            - AND -
14    Mr. Paul S. Mishkin
      Mr. Andrew DeLaney
15    DAVIS POLK & WARDWELL LLP
      450 Lexington A venue
16    New York, NY 10017
      Telephone: (212) 450-4292
17    Telecopier: (212) 701-5292
      paul.mishkin@davispolk.com
18    COUNSEL FOR DEFENDANT
      MORGAN STANLEY & COMPANY LLC
19    f/k/a MORGAN STANLEY & CO., INC.

20    Ms. Lauren Miller Etlinger
      FULBRIGHT & JAWORSKI LLP
21    Texas Bar No. 24065755
      letlinger@fulbright.com
22    1301 McKinney Street, Suite 5100
      Houston, Texas 77010
23    Telephone: (713) 651-5151
      Telecopier: (713) 651-5246
24    letlinger@fulbright.com
      COUNSEL FOR DEFENDANT MORGAN STANLEY & COMPANY LLC
25
```

1                    VOLUME 1 OF 1 VOLUME

2                    CHRONOLOGICAL INDEX

3   SEPTEMBER 29, 2014                          PAGE

4   Appearances . . . . . . . . . . . . . . . . . 2

5   Chronological Index . . . . . . . . . . . . . 3

6   Proceedings . . . . . . . . . . . . . . . . . 4

7   Court's Ruling . . . . . . . . . . . . . . . .4

8   Recessed . . . . . . . . . . . . . . . . . . 19

9   Court Reporter's Certificate . . . . . . . . 20

10              (No exhibits in this volume)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2    09/29/2014    (At the bench, on the record)
 3                    THE COURT:  This is 2011-67305, FDIC
 4    versus Morgan Stanley.  All right.  So, 75 pages later
 5    worth of briefing on the motion to reconsider, I have
 6    read the motion, I have read the response, I have read
 7    the reply.  I have read the CTS case.  I have read the
 8    Guaranty case, and I have read Nomura II.  And my
 9    ruling is unchanged as to the applicability -- or
10    whether the extender statute preempts the statute of
11    repose and statute -- and/or statute of limitations,
12    first.
13                    I am less certain as to whether to allow
14    the interlocutory appeal.  Previously I did not.  It's
15    fair to say that I stated in that order, I cited the
16    Fifth Circuit CERCLA case.  Is that BNSF?
17                    MR. HOLTON:  Yes, sir.
18                    THE COURT:  And then I said let's see
19    the CTS case --
20                    MR. HOLTON:  Yes, sir.
21                    THE COURT:  -- very prophetically.  And
22    that was, of course, then went up to the Supreme Court,
23    and they clip it.  So now we have Sam Sparks in Austin,
24    I think, or San Antonio.
25                    MR. HOLTON:  Austin.
```

1              MR. MISHKIN:  Austin, I believe.

2              THE COURT:  Who -- well, all right, I'm

3    just going to say that I don't agree with his analysis.

4    But it's not a -- it's not a throwaway -- it's not a

5    two-page order that, you know, that he goes into some

6    depth.  I don't think that that position is off the

7    wall or completely unreasonable.  I think that on both

8    -- between Nomura II and Judge Sparks' ruling it's a

9    lot of how many angels can dance on the head of a pin

10   kind of stuff.

11             While I think the overwhelming majority,

12   well-reasoned authority is consistent with what I ruled

13   and with Nomura II, even after CTS, I can allow for the

14   possibility that the local courts of appeals don't

15   always agree with me.

16             So my question is, before I rule on that

17   issue is, what does that mean for us going forward?

18   For example, one of the things that I wrote in the

19   previous order and we've talked about and you-all have

20   talked about in your respective papers is that only two

21   of the four claims pending before the Court might be

22   affected by a reversal, right?

23             R. HOLTON:  Yes, sir.

24             THE COURT:  And dismissal, A.

25             B, a lot of the discovery has been done

1    in this case.  C, I want to hear about whether you

2    think we can press forward while this interlocutory

3    appeal is pending or why we could not.  I'm not

4    inclined to allow it to stall the case.  I think we can

5    work on dual tracks if necessary.

6              And one of the things I put in the order

7    last time was that it seemed, at the time at least,

8    that this was not an issue -- a ruling by the court of

9    appeals in Texas was not going to -- I think I used the

10   term log jam -- make a log jam of these pending cases

11   under Texas law, or that are pending in Texas.  I was

12   not aware, at least, but not consciously aware of the

13   Guaranty matter in front of Judge Sparks.

14             MR. HOLTON:  It probably was pending,

15   Judge, but nor was I, I think.

16             THE COURT:  So the question is where

17   does it get us, and will it slow us down?  Does it have

18   to slow us down?  You know -- and is it really worth

19   doing it in an interlocutory basis, you know, or can it

20   be something that is addressed posttrial because,

21   again, it only affects two of, I guess, the four

22   claims?

23             MR. MISHKIN:  Your Honor, if I could

24   speak to that.  I think just as a preliminary matter, I

25   would note that Judge Stanton's decision in the

1    Southern District of New York has also come down on the

2    side of Judge Sparks. So it's more than his authority

3    on that issue. So I think there's clearly a

4    substantial basis for disagreement of opinion at this

5    point.

6                    In terms of material advancement, we do

7    think that there would be material advancement.

8    Although two of the four certificates would remain, the

9    issues are going to become a lot more simplified

10   because -- in particular because one of the two

11   certificates that would be out of the case is the only

12   securitization that Morgan Stanley itself sponsored and

13   created and with that comes a host of factual and

14   expert issues including about the process that Morgan

15   Stanley goes through to do a securitization. Those

16   issues are going to be out of the case. So it's going

17   to be substantially streamlined. I think there is a

18   benefit, in terms of the remaining discovery. I think

19   some of that discovery is going to be substantially

20   streamlined as a result of that reduction. And

21   certainly the issues at trial, Your Honor, would be

22   streamlined if those two certificates are out of the

23   case.

24                    THE COURT: Why?

25                    MR. MISHKIN: Because the evidence that

1   the jury would have to hear is going to be much more

2   limited.  We're not going to have to get into issues of

3   a process by which Morgan Stanley creates these

4   certifications, we're not going to have to get into all

5   of the excessive process that Morgan Stanley goes

6   through in terms of its diligence when it's in that

7   particular posture.

8                    And there's also far fewer loans that

9   are at issue at that point.  More than half of the

10  loans that under (inaudible) the certificates would be

11  out of the case if these two certificates are out.  And

12  so I think you have a much more -- I think you have a

13  much more streamlined, simplified proceedings at that

14  point.

15                   MR. HOLTON:  Thank you, Your Honor.

16  From our perspective, Your Honor, we think that

17  certainly the discovery that's pending should go

18  forward regardless of whether Your Honor (inaudible) --

19                   THE REPORTER:  I'm sorry.  I could not

20  hear you.

21                   MR. HOLTON:  We think that the discovery

22  that is going on right now with a current deadline of

23  October 24th should continue.  We are in the midst of

24  fact and expert discovery.  We said no reason why that

25  shouldn't continue no matter what the Court rules with

1   respect to whether there should be an interlocutory

2   appeal and at least briefing on summary judgment

3   motions should go forward as well so that in the event

4   at any time the Court would decide to stay as much as

5   possible will have been done in advance of, say, a

6   trial.

7           In regards to the one security point

8   that he makes, it's true that some of the issues would

9   be narrowed.  Obviously, we have claims on four

10  certificates and we would press forward with the other

11  two.  And although there are some intricacies that

12  might go out of the case as a result of elimination of

13  that one certificate, pretty much all the issues

14  presented remain, Judge.  And the case, of course,

15  would still be in the posture to go forward and we

16  think that it should do so.

17          THE COURT:  Tell me about Judge

18  Stanton's in the Southern District of New York.  Is it

19  just like Judge Sparks' or does it take a different

20  tack or what?

21          MR. MISHKIN:  Judge Stanton's opinion, I

22  believe we wrote a -- probably perhaps while you didn't

23  see it, Judge, it came down after we filed our brief

24  and we sent a letter brief to the Court the following

25  day -- the following business day, which I think was

1    the day after Labor Day.   Judge Stanton --

2                    THE COURT:   Yeah, I didn't see it.   Go

3    ahead.

4                    MR. MISHKIN:   But Judge Stanton's

5    opinion is almost devoid of analysis, Your Honor.

6    Judge Sparks' opinion is certainly more thoughtful.   I

7    think Judge Stanton's opinion is approximately 12 pages

8    long, 5 pages of which are block quotations of the CTS

9    case and a couple of pages of which are explanations of

10   what's gone on before.   There's very little that Judge

11   Stanton adds to what CTS says.   And, of course, we

12   think that what he does say is wrong.   I think there's

13   no comparing his decision to Judge Sparks' decision in

14   terms of his thoughtfulness and, perhaps, its

15   persuasiveness.

16                    Although we think that Judge Sparks'

17   decision suffers from a fundamental defect as well,

18   rendering it not appropriate to be filed, as the Court

19   evidently has already concluded and we certainly agree

20   with that.

21                    MR. MISHKIN:   Your Honor, could I

22   respond briefly on Judge Stanton's opinion?

23                    THE COURT:   Okay.   Very briefly because

24   I've already ruled on that issue.   I'm just more

25   interested from the standpoint if there was yet another

1 | angle that he was taking.

2 |           MR. MISHKIN:  I think it's consistent

3 | with Judge Sparks' opinion.  He has a portion of the

4 | opinion where he talks about why the purposes of the

5 | FDIC extender statute would be furthered, even under an

6 | interpretation where statutes of repose are not

7 | affected.  And so I think that's very consistent with

8 | Judge Sparks' decision but I think it's worth a read

9 | for that portion of the decision, Your Honor.

10 |           And I think it's also notable that it's

11 | in the context of the same extender provision.  So

12 | between Judge Stanton and Judge Sparks you now have a

13 | situation where all courts that have looked at the FDIC

14 | extender statute provision since CTS have all come out

15 | in Morgan Stanley's favor on this.

16 |           THE COURT:  Well, that's not true about

17 | Nomura II, or is that a different --

18 |           MR. MISHKIN:  They address different

19 | extender statutes, Your Honor.  And I agree they're

20 | very, very similar and they are certainly -- that

21 | there's certainly authority that needs to be looked at

22 | and we think they were wrongly decided.  But I do think

23 | it's notable that all of the courts that have looked

24 | specifically at our provision here have come down in

25 | Morgan Stanley's favor.

```
 1              MR. HOLTON:  As long as we're counting
 2   cases, Judge, there's also a decision from the
 3   Honorable Denise Cote in the same district that we
 4   mention in our papers where she interprets one of the
 5   other similar statutes and also cites the Nomura II.  I
 6   think she says a finely written opinion that she
 7   follows to a great extent, so --
 8              THE COURT:  That's N-o-m-u-r-a.  And
 9   then Roman numeral II.
10              MR. HOLTON:  Yes, sir.
11              So, Judge, I think what you said the
12   last time really applies this time to the interlocutory
13   appeal, which you said that the great majority of
14   well-reasoned opinions -- or well-reasoned decisions
15   were on the side of the FDIC and there's nothing about
16   Judge Sparks' decision or certainly Judge Stanton's
17   decision that changes that in any way.
18              The thoughtful, authoritative decision
19   is the Nomura II.  Judge Stanton offers very little
20   analysis.  Judge Sparks, unfortunately, decides he's
21   not going to follow CTS really at all.  He continues to
22   follow the Burlington decision, the reasoning that is
23   profoundly different than the CTS court's reasoning and
24   he seemed to make his conclusion as to the FDIC
25   extender statute that's really just based on the wrong
```

1   analysis at this point in time.  And we think clearly

2   that the CTS analysis would apply to lead to the

3   conclusion that this Court has already drawn.

4              THE COURT:  All right.  I think there's

5   enough water under the bridge that it's time to let the

6   First or Fourteenth decide.  But it is my fervent

7   intent to not slow down this case as it moves towards

8   to trial.

9              So I'm going to sign an order that

10   you're welcome to prepare that points out -- that says

11   you may take the interlocutory appeal, that it's not

12   this Court's intent to stay any discovery or motion for

13   other motion practice and it intends to proceed to

14   trial at the current trial date.

15              If by chance you've argued and we're

16   just waiting on an opinion and we need to push the

17   trial, you know, 30 days or so, and hopefully get an

18   opinion from the court of appeals, we can address that

19   later.  But it is my intent to go forward.

20              MR. MISHKIN:  Thank you, Your Honor.

21              THE COURT:  Okay.

22              MS. HOCHMUTH:  Your Honor, may I raise

23   one quick housekeeping issue?

24              THE COURT:  Yes.

25              MS. HOCHMUTH:  The FDIC filed a motion

1   to exclude expert evidence and there's actually hearing

2   next Monday on that motion.

3               THE COURT:  Uh-huh.

4               MS. HOCHMUTH:  To that motion the FDIC

5   attached an expert report that was deemed confidential.

6   The parties have signed an agreed order to redact that

7   and take that out of the public record so it would just

8   be viewed by you, not by the public.  On Friday we

9   filed a letter agreement and then I brought in a copy

10  of the proposed order that we filed.

11              THE COURT:  Did this come up the other

12  day and I -- it can be withdrawn.  Which is different

13  than sealing it under Rule 76a.  Right?  So I'm happy

14  to sign that as long as you understand that it is -- I

15  don't know -- if I sign an order striking something or

16  allowing something to be withdrawn, how is it treated

17  in the file?  Do you know?

18              THE CLERK:  I do not know.  I just know

19  when they do the seal and that's all I know.

20              THE COURT:  My understanding is that --

21  well, I believe that I can seal -- not seal.  I can

22  allow it to be struck or withdrawn by agreement, at

23  least.  But, you know, the danger is, of course, that a

24  court -- that generally you're supposed to follow

25  Rule 76a.  But I think if everybody agrees that it be

1  withdrawn, the impact of that is that it is not part of

2  the Court's record.  As opposed to something that is

3  sealed is part of the Court's record, it's just not

4  visible to the public.

5            So, for example, if this were appealed

6  -- I can't imagine that this case would get appealed --

7  but if it were appealed, then it wouldn't go up to the

8  court of appeals because it wouldn't be part of the

9  Court's record.

10            So you would need a separate agreement,

11  if it's not already in there, that contemplates that it

12  would be by agreement, an appendix, or something that

13  would go up to the court of appeals, then you would

14  file the appropriate motion there that it not be

15  disclosed or something like that.

16            MR. HOLTON:  Thank you for that

17  explanation, Your Honor.  I think based on that, we

18  probably have a little more talking to do with our

19  opposing counsel, but I suspect we'll be able to nail

20  that down in a couple of days.

21            THE COURT:  So do you understand the

22  distinction I'm making?

23            Rule 76a is a rule that says that after

24  notice to the public -- I'm probably not telling you --

25  you may or may not know this, but I'm sure you have

1    something similar in New York.  After notice to the

2    public, the Court can seal certain types of things so

3    they're not available to the public.  The notice and

4    hearing provision is so that if the press or somebody

5    else wanted access to it, there's a presumption that

6    the Court's files are open to the public.  Right?  So

7    that's 76a.  Separate and apart from that if you want

8    something just to be withdrawn from the record and not

9    part of the Court's record, I think you can do that,

10   but the downside of that it's no longer part of the --

11   my view of it --

12             MS. HOCHMUTH:  Right.

13             THE COURT:  -- anyway -- it's no longer

14   part of the record for appeal.

15             MS. HOCHMUTH:  I think we were

16   instructed by the clerk -- and we can certainly go back

17   and do this how ever it's best to be done.  But we were

18   told because we actually cite the image number here in

19   the order that what that did is remove the image from

20   the public's view but that this was still part of the

21   Court's file.

22             THE COURT:  That is sealing something.

23   And I cannot allow that.  Because you're not competing

24   with me, you're competing with the First Amendment that

25   these things are supposed to be public.  Okay?

1          So if you want to seal something, which

2     is effectively that, then you need to go through that

3     process.  Which you can do.  You're welcome to, and

4     then we can seal it.  But it's just a matter of notice

5     and a hearing.  You've got to file something with the

6     clerk and they put it on -- literally put it up on a

7     bulletin board over in the Family Law Center in the

8     lobby for public notice.  And then after, I think it's

9     14 days at least or something, then we can have a

10    hearing or you can set it for submission and it can be

11    sealed.  That's one option.

12          The other option I think is inconsistent

13    with that, which is that's not part of the record

14    anymore.

15          MR. HOLTON:  Your Honor, the particular

16    report is fundamental to the motion.  Would you still

17    be in a position to consider it?

18          THE COURT:  Yes.  As long as it's --

19    this comes up all the time in this context.  You don't

20    want something to be filed -- it's like you never filed

21    this with the Court.

22          MR. HOLTON:  Yes, sir.

23          THE COURT:  Or the clerk.  Then what you

24    would typically do is say by agreement we're filing

25    this document as in-camera, confidential, for Court's

```
 1   eyes only.  And yes, the Court can consider it as part
 2   of the motion, it's just not part of the Court's file.
 3   So that in the future if it becomes an issue on appeal
 4   then you would need to have some language in your Rule
 5   11 Agreement that says, We're not going to file this
 6   with the Court because it's confidential and we're
 7   worried about everybody seeing it but we also need to
 8   -- it is part of the operative facts here for this
 9   motion, so we need to by agreement agree that if this
10   matter is appealed and it's pertinent to the appeal,
11   then it will be presented to the court of appeals as
12   though it were part of the record.  Something along
13   those lines.
14             MR. HOLTON:  Thank you, Judge.
15             THE COURT:  I'm just not going to let
16   you seal something without going through the process
17   for sealing it.
18             MR. HUNT:  We would file it in-camera
19   for your review if you'd like us to.
20             THE COURT:  Yeah.  That's the short
21   answer, yeah.  Do whatever you want with respect to
22   start position.  Separate and apart from that, feel
23   free to submit it in-camera as an exhibit that's not
24   filed of record.
25             MR. MISHKIN:  Thank you, Your Honor.
```

```
 1              MR. HOLTON:  Thank you very much.
 2              THE COURT:  And if that becomes an issue
 3  because you can't agree that the Court should consider
 4  it, even though it's not actually filed as part of the
 5  record, then I don't know, file the appropriate motion
 6  and I'll deal with that.
 7              MR. HOLTON:  We actually get along
 8  pretty well most of the time.  I think we'll be okay.
 9              THE COURT:  So I'll look for your order
10  by the end of the week.  Circulate it and get
11  everybody's signature, at least as to form, and we'll
12  proceed.
13              MR. MISHKIN:  That'll be fine, Your
14  Honor.
15              MR. HOLTON:  Thank you very much, Judge.
16              THE COURT:  All right.  Thank you.  Have
17  a nice afternoon.
18              (Recessed)
19
20
21
22
23
24
25
```

1    THE STATE OF TEXAS )

2    COUNTY OF HARRIS    )

3

4        I, Carolyn Ruiz Coronado, Official Court Reporter in and for the 151st District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

9        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

11        I further certify that the total cost for the preparation of this Reporter's Record is $60.00 and will be paid by Ms. Farrell Hochmuth, BAKER LAW.

13        WITNESS MY OFFICIAL HAND this the 1st day of October, 2014.

15

16        /s/Carolyn Ruiz Coronado
        Carolyn Ruiz Coronado, Texas CSR#7113
17        Expiration Date:  12/31/2014
        Official Reporter, 151st District Court
18        Harris County, Texas
        201 Caroline, Houston, TX 77002
19        (713) 398-3548

20

21

22

23

24

25