**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION *as Receiver for* CITIZENS NATIONAL BANK *and as Receiver for* STRATEGIC CAPITAL BANK,<br><br>*Plaintiff*,<br><br>v.<br><br>BEAR STEARNS ASSET BACKED SECURITIES I LLC; THE BEAR STEARNS COMPANIES LLC.; J.P. MORGAN SECURITIES LLC.; CITICORP MORTGAGE SECURITIES, INC.; CITIMORTGAGE, INC.; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CREDIT SUISSE MANAGEMENT LLC; CREDIT SUISSE SECURITIES (USA) LLC; MERRILL LYNCH MORTGAGE INVESTORS, INC.; MERRILL LYNCH MORTGAGE CAPITAL INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; ALLY SECURITIES, LLC; DEUTSCHE BANK SECURITIES INC.; HSBC SECURITIES (USA) INC.; RBS SECURITIES INC.; and UBS SECURITIES LLC,<br><br>*Defendants*. | No. 12-cv-4000 (LTS) |

**JOINT SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT .....................................................................................................................................1

I.   FIRREA DOES NOT ESTABLISH A NEW "COMPREHENSIVE TIME PERIOD"
     THAT DISPLACES STATUTES OF REPOSE ....................................................................1

     A.   FIRREA Is Not Broader than CERCLA ................................................................3

     B.   Under *Waldburger*, Statutory References to "Statutes of Limitations" Do
          Not Affect "Statutes of Repose"..............................................................................4

     C.   *Waldburger*'s Statutory Purpose Analysis Applies Equally Here.........................6

II.  THE FDIC CANNOT AVOID *WALDBURGER*'S TEXTUAL ANALYSIS ....................7

III. *WALDBURGER*, NOT *UBS*, CONTROLS THE OUTCOME HERE ...............................8

IV.  THE ISSUE SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL
     OR STAYED PENDING THE SECOND CIRCUIT'S DECISION IN
     *FDIC-COLONIAL* ................................................................................................................10

CONCLUSION ................................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., Inc.*,
   419 F.3d 355 (5th Cir. 2005) ..................................................................................................2

*CTS Corp. v. Waldburger*,
   134 S. Ct. 2175 (2014) .................................................................................................. passim

*FDIC v. Chase Mortg. Fin. Corp.*,
   --- F. Supp. 2d ---, 2014 WL 4354671 (S.D.N.Y. Aug. 29, 2014) ................................. 7, 8, 9

*FDIC v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2014 WL 4161561 (W.D. Tex. Aug. 18, 2014) ............................................................. passim

*FHFA v. HSBC N. Am. Holdings Inc.*,
   2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014) ........................................................................3

*FHFA v. UBS Americas Inc.*,
   712 F.3d 136 (2d Cir. 2013) ..............................................................................................9, 10

*In re S. African Apartheid Litig.*,
   2014 WL 1569423 (S.D.N.Y. Apr. 17, 2014) .........................................................................9

*In re Sokolowski*,
   205 F.3d 532 (2d Cir. 2000) ....................................................................................................9

*Kazazian v. Bartlett & Bartlett LLP*,
   2007 WL 4563909 (S.D.N.Y. Dec. 19, 2007) ........................................................................9

*Kosak v. United States*,
   465 U.S. 848 (1984) ................................................................................................................4

*NCUA Bd. v. Nomura Home Equity Loan, Inc.*,
   727 F.3d 1246 (10th Cir. 2013) ...............................................................................................4

*NCUA Bd. v. Nomura Home Equity Loan, Inc.*,
   764 F.3d 1199 (10th Cir. 2014) ............................................................................................3, 4

*United States v. Emmenegger*,
   329 F. Supp. 2d 416 (S.D.N.Y. 2004) .....................................................................................9

*United States v. Goines*,
   357 F.3d 469 (4th Cir. 2004) ...................................................................................................1

*United States v. Santiago*,
   268 F.3d 151 (2d Cir. 2001) ....................................................................................................9

## STATUTES

12 U.S.C. § 1821(d)(14)(A) ...............................................................................................2, 4, 7

12 U.S.C. § 1821(d)(14)(A)(i) ............................................................................................passim

12 U.S.C. § 1821(d)(14)(A)(ii) ...........................................................................................2, 6, 7

12 U.S.C. § 1821(d)(14)(B) ...............................................................................................2, 4, 7

12 U.S.C. § 1821(d)(14)(C)(i) ....................................................................................................4

28 U.S.C. § 1292(b) ..................................................................................................................10

42 U.S.C. § 9658(a)(1) ...........................................................................................................2, 3

735 ILCS 5/13-205 .....................................................................................................................8

## OTHER AUTHORITIES

Brief for Respondents in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014),
    *available at* 2014 WL 1260425 ...........................................................................................3

**PRELIMINARY STATEMENT**

The Supreme Court's decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), rested, in the FDIC's words, on the "text, structure, purpose, and legislative history" of the extender statute at issue in that case. Opp'n 3. As demonstrated by Defendants' opening supplemental brief ("Suppl. Br."), the Supreme Court's analysis of each of these factors applies equally to the FDIC Extender Statute and demonstrates that it does not override statutes of repose.

The FDIC's primary contention that the CERCLA extender provision and the FDIC Extender Statute are so "fundamentally different" (Opp'n 2, 6, 17) as to render *Waldburger* inapplicable is simply wrong, and its claim that the Supreme Court's ruling in *Waldburger* should be limited to the specific facts of that case contravenes the Supreme Court's preference to "avoid[] narrow, fact-specific decisions." *United States v. Goines*, 357 F.3d 469, 480 (4th Cir. 2004). The FDIC also fails to draw any meaningful distinctions between the statutes' purposes, as the CERCLA extender provision's purpose is to "help plaintiffs bring tort actions for [certain] harm[s]" that otherwise would be time-barred, *Waldburger*, 134 S. Ct. at 2188—the very same purpose identified by the FDIC here. *See* Opp'n 11. Moreover, *Waldburger* makes clear that it would be improper to abrogate substantive rights embodied in statutes of repose based on an extender statute's general purpose to extend certain time-barred claims and that, in any event, "statutes of repose [do not] pose an unacceptable obstacle to the attainment of [the extender statute's] purposes." *Waldburger*, 134 S. Ct. at 2188. The same is true here.

**ARGUMENT**

I.   **FIRREA DOES NOT ESTABLISH A NEW "COMPREHENSIVE TIME PERIOD" THAT DISPLACES STATUTES OF REPOSE**

The FDIC repeatedly attempts to draw a distinction between the statutes at issue by arguing that "the FDIC Extender Statute *creates* 'the applicable statute of limitations' for the

1

FDIC's actions," whereas the CERCLA provision at issue in *Waldburger* "retains 'the applicable' limitations period." Opp'n 12.[1] As other courts have recognized, the distinction the FDIC attempts to draw between FIRREA and CERCLA is nonexistent. *See FDIC v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2014 WL 4161561, at *6 (W.D. Tex. Aug. 18, 2014) ("*Merrill*") ("No such distinction can be drawn between the statutes.").[2] Both statutes accomplish the same purpose using very similar language, and neither statute completely supplants existing limitations periods. The FDIC Extender Statute leaves in place both "the period applicable under State law" and "the date on which the cause of action accrues" when that state period is longer or that accrual date is later than the FDIC Extender Statute's modified limitations framework. 12 U.S.C. § 1821(d)(14)(A), (B). CERCLA similarly leaves in place the accrual date that applies under pre-existing law if it is later than CERCLA's modified accrual date. *See* 42 U.S.C. § 9658(a)(1). Thus, both statutes modify the existing statute of limitations by resetting its starting date in certain circumstances. *See* 12 U.S.C. § 1821(d)(14)(B) (setting the date on which the statute of limitations "begins to run"); 42 U.S.C. § 9658(a)(1) (setting the date on which the statute of limitations "shall commence"). The only difference is that the FDIC Extender Statute also provides for minimum three- and six-year periods for bringing tort and contract claims after "accru[al]." 12 U.S.C. § 1821(d)(14)(A)(i)(I), (ii)(I). Neither the FDIC nor its authorities can explain why this distinction somehow makes the FDIC Extender Statute

---

[1] *See also* Opp'n 4-5 ("[T]he Extender Statute plainly establishes a universal time frame for all actions brought by [the agency,] . . . while [CERCLA] addresses only when the accrual date for [toxic tort] claims . . . begins to run." (internal quotation marks omitted)); *id.* at 10 ("The Extender Statutes do not simply set the date a claim accrues. Rather, they set the overall time [limit]."); *id.* at 15 (The FDIC Extender Statute "create[s] a single, comprehensive time period.").

[2] The FDIC attempts to distinguish *Merrill* by arguing that the court "applied a presumption against preemption analysis since discredited in [*Waldburger*]." Opp'n 12 n.6. But the court in *Merrill*, like *Waldburger*, expressly noted that it was relying on "ordinary principles of statutory construction"—*not* the presumption against preemption. 2014 WL 4161561, at *9 n.9 (internal quotation marks omitted). The FDIC also incorrectly states that *Merrill* "eschew[ed] the analysis set forth in [*Waldburger*,] instead employing the analysis of . . . *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co., Inc.*, 419 F.3d 355 (5th Cir. 2005)." Opp'n 13 n.7. *Merrill* discussed *Burlington* only once in a footnote and did so to note that the FDIC's failure to acknowledge relevant authority was "[s]omewhat surpris[ing]." 2014 WL 4161561, at *8 n.8. Any fair reading of *Merrill* demonstrates that it is simply "a faithful application of *Waldburger*'s logic to the FDIC Extender Statute." *Id.* at *2.

2

"fundamentally different" from CERCLA's, warranting a different result from that reached by the Supreme Court in *Waldburger*.[3]

Moreover, even assuming that FIRREA "creates" a "statute of limitations," which it does not, the creation of a new statute of limitations would not displace preexisting statutes of repose, and the FDIC's arguments for reading the statute in such a "comprehensive" fashion are unpersuasive. Opp'n 15. Specifically, the FDIC argues that (1) FIRREA is "broad" whereas CERCLA is "narrow"; (2) the term "statute of limitations" encompasses statutes of repose; and (3) a comprehensive construction is necessary in order to effectuate the statute's purpose. These arguments cannot be reconciled with *Waldburger*, as discussed below.

### A. **FIRREA Is Not Broader than CERCLA**

The FDIC argues that FIRREA and CERCLA are somehow different because "the FDIC Extender Statute . . . rather expressly supersedes all other time periods and applies to '*any* action brought by [the FDIC . . . ]'" as conservator. Opp'n 9 (quoting FIRREA). CERCLA, however, uses the exact same language. *See* 42 U.S.C. § 9658(a)(1) ("In the case of *any action* [meeting the statutory criteria], [ ] *the* applicable limitations period for such action . . . *shall* commence . . . ."). Indeed, like the FDIC, the plaintiffs in *Waldburger* argued that this "any action" language signaled that CERCLA's extender provision should be interpreted broadly. *See Waldburger*, Resp'ts Br. 20-21, No. 13-339 (Mar. 26, 2014), *available at* 2014 WL 1260425. However, while the Supreme Court expressly quoted CERCLA's "any action" language in its decision, it did not find enough merit in this argument even to bother refuting it. *See Waldburger*, 134 S. Ct. at 2184. Thus, the fact that FIRREA, like CERCLA, applies to the

---

[3] The FDIC relies predominantly on decisions of two federal courts that reaffirmed pre-*Waldburger* rulings holding that similar extender statutes displace both statutes of limitations and statutes of repose. *See NCUA Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199 (10th Cir. 2014) ("*Nomura II*"); *FHFA v. HSBC N. Am. Holdings Inc.*, 2014 WL 4276420 (S.D.N.Y. Aug. 28, 2014) ("*HSBC*"). As discussed in Defendants' opening brief (Suppl. Br. 21-24) and further below, *Nomura II*'s analysis is fundamentally flawed, and *HSBC*, which simply "adopts" *Nomura II*, is no more persuasive.

3

"statute of limitations" in "any action" falling within its scope does not and cannot mean that the statute somehow abrogates statutes of repose, which have different purposes than statutes of limitations as the Supreme Court explained at length.

The FDIC also argues that FIRREA, unlike CERCLA, should be read broadly because CERCLA is a "narrow 'exception'" while the FDIC Extender Statute creates a "principal rule." Opp'n 9, 17.  However, *both* statutes are exceptions that "modify state law in some, but not all, circumstances."  *Merrill*, 2014 WL 4161561, at *7.  Indeed, the FDIC's own authorities have held as much.  *See NCUA Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1266 (10th Cir. 2013) ("*Nomura I*") ("[T]he Extender Statute . . . *functions as a narrow exception* for actions brought by [the conservator]." (emphasis added))[4]; *HSBC*, 2014 WL 4276420, at *6 ("*HERA creates an exception* for a single, privileged plaintiff—FHFA." (emphasis added)).  Moreover, *Waldburger* applied "ordinary principles of statutory construction," 134 S. Ct. at 2189 (Scalia, J., concurring), and nowhere suggested that statutes creating "exceptions" to preexisting law should be narrowly construed.  There is no basis to infer such a new rule of construction here.[5]

B. **Under *Waldburger*, Statutory References to "Statutes of Limitations" Do Not Affect "Statutes of Repose"**

*Waldburger* found it "instructive" that CERCLA "uses the term 'statute of limitations' four times (not including the caption), but not the term 'statute of repose.'"  134 S. Ct. at 2185. The FDIC does not dispute that the FDIC Extender Statute and its related revival provision likewise use the term "statute of limitations" or "statute of limitation" four times (not including the caption), but not the term "statute of repose."  12 U.S.C. § 1821(d)(14)(A), (B), (C)(i). *Waldburger* recognized that "[w]hile the term 'statute of limitations' has acquired a precise

---

[4] Despite recognizing the extender statute as a "narrow exception" in *Nomura I*, in attempting to distinguish *Waldburger* in *Nomura II*, the court reversed course, stating that "[u]nlike [CERCLA,] . . . the Extender Statute does not establish a narrow 'exception' to the regular rule." *Nomura II*, 764 F.3d at 1208.

[5] *See Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984) ("[T]he proper objective . . . is to identify those circumstances which are within the words and reason of the exception – no less and no more.") (internal quotation marks omitted).

4

meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term 'statute of limitations' is sometimes used in a less formal way." 134 S. Ct. at 2185. Nonetheless, after discussing the history of these terms' usage, the Court concluded that "the concept that statutes of repose and statutes of limitations are distinct was well enough established" prior to the passage of CERCLA to be afforded significance and that the statute's use of the phrase "statute of limitations" in CERCLA was evidence that the statute was not intended to encompass statutes of repose. *Id.* at 2186.

      The FDIC attempts to avoid this holding by arguing that the Supreme Court "relied heavily on the Study Group Report that Congress commissioned before it enacted section 9658, which referred expressly to statutes of repose as distinct from statutes of limitation." Opp'n 11. The FDIC's argument that "[t]here is nothing equivalent in the legislative history of FIRREA" (*id.* at 14) misconstrues the purpose of the Court's discussion of that Study Group Report. The Court did not—as the FDIC implies—conclude that the Study Group Report evidenced an idiosyncratic Congressional understanding, unique to the CERCLA context, that "statute of limitations" did not encompass "statutes of repose." Instead, the Supreme Court viewed this legislative history, along with the other texts and scholarly articles, as evidence that the statute employed the distinct, narrower meaning of the term that was generally understood at the time of its enactment. There is no rational basis to conclude that Congress's understanding of the difference between statutes of limitations and repose as of 1986 was somehow lost when it enacted the FDIC Extender Statute three years later. *See Merrill*, 2014 WL 4161561, at *7 ("[T]he understanding Congress had of statutes of limitations and statutes of repose at the time CERCLA was passed in 1986 can fairly be imported to Congress three years later when it enacted the FDIC Extender Statute."); *see also* Suppl. Br. 23. Thus, *Waldburger*'s reference to this legislative history underscores, rather than undercuts, the significance of the statute's use of

5

the term "statute of limitations" and not "statute of repose."

      C.     ***Waldburger*'s Statutory Purpose Analysis Applies Equally Here**

The FDIC also repeatedly argues that CERCLA and FIRREA are "fundamentally different" because, unlike CERCLA, the FDIC Extender Statute's purpose would be undermined by excluding statutes of repose from its reach. Specifically, the FDIC argues that "[e]xempting statutes of repose from the FDIC Extender Statute would be antithetical to FIRREA's stated goals, and the power and authority expressly granted to the FDIC to assert claims as receiver of failed financial institutions." Opp'n 17. "This is the same basic goal-oriented reasoning rejected by *Waldburger*," *Merrill*, 2014 WL 4161561, at *8, and the FDIC's invitation to have this Court erroneously ignore the Supreme Court should be rejected.

In *Waldburger*, the Supreme Court directly addressed the argument that statutes of repose create "an unacceptable obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting CERCLA to "help[] plaintiffs bring tort actions for harm caused by toxic contaminants." 134 S. Ct. at 2188. No doubt, the remediation of toxic environmental contamination was an important policy advanced by Congress when it enacted CERCLA. Yet the Supreme Court refused to adopt an interpretation of the statute that was unsupported by its text based only on the statute's purpose framed at a high level of generality. *Id.* The Supreme Court's reasoning applies here with equal force. "Like CERCLA, FIRREA 'leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions.'" *Merrill*, 2014 WL 4161561, at *8 (quoting *Waldburger*, 134 S. Ct. at 2188). Even preexisting statutes of limitations are preserved in a modified form. *See* 12 U.S.C. § 1821(d)(14)(A)(i)-(ii). Thus, leaving repose periods intact is not "antithetical" to the FDIC Extender Statute's specific purpose of extending the time to bring

6

claims, any more than the Supreme Court's ruling in *Waldburger* was "antithetical" to the purpose of the CERCLA extender statute.[6]

## II. THE FDIC CANNOT AVOID *WALDBURGER*'S TEXTUAL ANALYSIS

Because FIRREA's use of the term "statute of limitations" rather than "statute of repose" is instructive but not dispositive, "[t]he Court must examine other features of the statutory text to determine whether Congress intended to include statutes of repose in the FDIC Extender Statute's ambit." *FDIC-Colonial*, 2014 WL 4354671, at *3. Like the CERCLA extender provision, the FDIC Extender Statute speaks in terms of accrual and uses the singular rather than the plural—features that were central to the Supreme Court's assessment that CERCLA covered only statutes of limitations. Thus, *Waldburger*'s analysis "applies equally to this case." *Id.*

The FDIC does not and cannot dispute that, just as the CERCLA extender provision incorporates concepts of accrual, *see Waldburger*, 134 S. Ct. at 2187, the FDIC Extender Statute explicitly ties its operation to accrual. *See* 12 U.S.C. § 1821(d)(14)(A)(i)-(ii), (B). It contends, however, that this is irrelevant because "[t]he FDIC Extender Statute does not use the term 'accrues' in connection with any language in the statute that references state law" but instead "uses the term 'accrual' . . . to create a starting point for the *new* limitations period for the FDIC." Opp'n 17. Not so. The FDIC Extender Statute leaves intact both "the period applicable under state law" (the pre-existing limitations period) and "the date on which the cause of action accrues" (the pre-existing accrual date), when those afford the FDIC more time to file suit. *See* 12 U.S.C. § 1821(d)(14)(A)-(B).[7] This is precisely the "use[of] the term 'accrual' to modify the

---

[6] Judge Stanton's observation that the FDIC Extender Statute "give[s] the FDIC more time to bring claims that would otherwise have been time barred," regardless of its effect on statutes of repose, is right on point and not, as the FDIC contends, "ironic." Opp'n 17 n.10 (citing *FDIC v. Chase Mortg. Fin. Corp.*, --- F. Supp. 2d ---, 2014 WL 4354671, at *5 (S.D.N.Y. Aug. 29, 2014) ("*FDIC-Colonial*")). As in *FDIC-Colonial*, the statute of repose for the securities transactions at issue here is two years longer than the statute of limitations. By extending the shorter statute of limitations, the FDIC Extender Statute fulfills its purpose of providing an extension to the FDIC, but it does not do so without limitation.

[7] For example, in the case of a tort claim subject to a five-year statute of limitations (for instance, under Illinois law,

7

commencement date for the continued operation of state limitations periods" that the FDIC claims is absent from FIRREA.  Opp'n 17.

Similarly, the FDIC does not and cannot dispute that, "[l]ike CERCLA, the FDIC Extender Statute describes the covered time period in the singular by setting forth the applicable statute of limitations and the date on which the statute of limitations begins to run, and looking to 'the period applicable under State law' and 'the date on which the cause of action accrues.'" *FDIC/Colonial*, 2014 WL 4354671, at *4.  Because the FDIC cannot dispute that the two statutes are identical in this respect, it argues that "while . . . using the singular 'statute of limitations' to modify both statutes of limitations and repose would be awkward in CERCLA[,] . . . the use of the singular here is fully consistent with Congress's intent to create a single, comprehensive time period."  Opp'n 15.  This argument does not withstand scrutiny, as FIRREA also uses the singular to describe the type of state law provision it modifies.  *See* 12 U.S.C. § 1821(d)(14)(A)(i)(II), (ii)(II) ("the period applicable under State law").  This is precisely the "language describing the covered period in the singular" that the Supreme Court held "would be an awkward way to mandate the pre-emption" of both statutes of limitations and statutes of repose.  *Waldburger*, 134 S. Ct. at 2186-87 (relying on references to "the applicable limitations period" and "the statute of limitations established under State law").  Moreover, given that the textual "context" of the FDIC Extender Statute is identical to that at issue in *Waldburger*, the FDIC's Dictionary Act argument (Opp'n 15) adds nothing to its analysis.[8]

### III.   *WALDBURGER*, NOT *UBS*, CONTROLS THE OUTCOME HERE

Because the FDIC cannot successfully distinguish *Waldburger*, its lead argument is that the Court is required to ignore *Waldburger* and follow *FHFA v. UBS Americas Inc.*, 712 F.3d

---

*see* 735 ILCS 5/13-205), which accrued prior to conservatorship, the accrual date would be adjusted to the date of the conservatorship, and the state law limitations period would run from that date.

[8] The FDIC's observation that CERCLA created a tolling rule for minors and incompetent individuals but FIRREA did not (Opp'n 10) evidences nothing but the rather obvious fact that the FDIC cannot be a minor or an incompetent individual.

136 (2d Cir. 2013) ("*UBS*").  The FDIC's insistence that the Court is bound by *UBS* notwithstanding *Waldburger* (Opp'n 4-5) is directly refuted by Judge Stanton's decision in *FDIC-Colonial*.  There, the court held that although *UBS* "seemed to resolve the statute of repose dispute in the FDIC's favor" prior to the Supreme Court's decision, *Waldburger*'s analysis "applie[d] equally" to the FDIC Extender Statute and demonstrated that it "does not alter applicable statutes of repose."  *FDIC-Colonial*, 2014 WL 4354671, at *1-2, *5; *accord Merrill*, 2014 WL 4161561, at *9 ("*UBS*'s conclusion is irreconcilable with . . . *Waldburger*, and it is ultimately the Supreme Court's analysis which must control.").[9]

The FDIC cites *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004), for the proposition that a district court must follow a Second Circuit decision unless it has been "so undermine[d] . . . that it will almost inevitably be overruled," but this standard is not the law.  *Emmenegger* cited no authority for its "almost inevitable" language, and the Second Circuit, by contrast, holds that it is not bound by a prior decision if "it has been *called into question* by an intervening Supreme Court decision."  *United States v. Santiago*, 268 F.3d 151, 154 (2d Cir. 2001) (emphasis added).[10]  Numerous courts in this District (cited in Defendants' brief yet ignored by the FDIC) apply this same standard.  *See* Suppl. Br. 16.  This, of course, makes sense: A district court should not be required to issue an erroneous decision based on authority whose "rationale [has been] overruled, implicitly or expressly, by the Supreme Court."  *In re S. African Apartheid Litig.*, 2014 WL 1569423, at *4 (S.D.N.Y. Apr. 17, 2014).[11]

Examining the two decisions together makes their incompatibility clear.  Notwithstanding

---

[9] The FDIC criticizes *FDIC-Colonial* for not addressing the Tenth Circuit's contrary ruling in *Nomura II*.  Opp'n 12 n.6.  But Judge Stanton's straightforward application of the Supreme Court's analysis in *Waldburger*, rather than the Tenth Circuit's decision, simply highlights the correctness of the court's analysis, as it is the Supreme Court, not the Tenth Circuit, that binds courts within the Second Circuit.

[10] *See also In re Sokolowski*, 205 F.3d 532, 534-35 (2d Cir. 2000) ("[T]his court is bound by a decision of a prior panel unless . . . its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*.").

[11] Even if the FDIC's proposed "almost inevitable" standard were the law, it would be met here for the reasons discussed above and in Part II of Defendants' opening brief.  *See Kazazian v. Bartlett & Bartlett LLP*, 2007 WL 4563909, at *1-2 (S.D.N.Y. Dec. 19, 2007) (following Supreme Court holding, not contrary circuit precedent).

9

the FDIC's protestations that "the Supreme Court conducted the same type of analysis as the Second Circuit" (Opp'n 6), *Waldburger*'s holding that the textual distinctions between "statutes of limitations" and "statutes of repose" are "instructive" is sufficient to dispose of *UBS*. Far from finding the textual difference between "statutes of limitations" and "statutes of repose" to be "instructive," *UBS* found it completely irrelevant, reasoning that "[a]lthough statutes of limitations and statutes of repose are distinct in theory . . . the term 'statute of limitations' [has long been used] to refer to statutes of repose." 712 F.3d at 142-43. From this, *UBS*'s holding that statutes of repose were preempted was essentially a foregone conclusion, requiring minimal further analysis. *Id*. *Waldburger* rejects this key premise of *UBS* and thus requires the court to undertake a different analysis of the statutory text. *See also* Suppl. Br. 16-21.

IV. **THE ISSUE SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL OR STAYED PENDING THE SECOND CIRCUIT'S DECISION IN *FDIC-COLONIAL***

The FDIC does not and cannot dispute that, if the Court disagrees with Defendants' position herein, two of the three requirements for interlocutory appeal are met: The issue "involves a controlling question of law" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The FDIC merely argues that the third requirement is not met "[b]ecause there is no substantial ground for difference of opinion in this Circuit regarding whether the FDIC Extender Statute supplants statutes of repose." Opp'n 19. This is obviously wrong. While the FDIC is unwilling to acknowledge it, there is now an even split within this Circuit as to *UBS*'s viability after *Waldburger*—a fact that plainly evidences substantial ground for difference of opinion.[12]

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted.

---

[12] The FDIC does not even attempt to justify its opposition to Defendants' request in the alternative that the Court stay the proceedings pending the appeal in the Second Circuit.

Dated: October 31, 2014  Respectfully submitted,
New York, New York

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP | MAYER BROWN LLP |
| By: /s/ Andrew T. Frankel | By: /s/ Michael O. Ware |
| Thomas C. Rice (trice@stblaw.com)<br>Andrew T. Frankel (afrankel@stblaw.com)<br>Abigail W. Williams (awilliams@stblaw.com)<br>425 Lexington Avenue<br>New York, New York  10017<br>Phone: (212) 455-2000<br>Fax: (212) 455-2502 | Michael O. Ware (mware@mayerbrown.com)<br>S. Christopher Provenzano (cprovenzano@mayerbrown.com)<br>1675 Broadway<br>New York, New York  10019<br>Phone: (212) 506-2500<br>Fax: (212) 262-1910 |
| *Attorneys for Defendants Deutsche Bank Securities Inc., RBS Securities Inc., and UBS Securities LLC* | *Attorneys for Defendant HSBC Securities (USA), Inc.* |

CRAVATH, SWAINE & MOORE LLP

By: /s/ Richard W. Clary

Richard W. Clary (rclary@cravath.com)
Julie A. North (jnorth@cravath.com)
Richard J. Stark (rstark@cravath.com)
Michael T. Reynolds (mreynolds@cravath.com)
Lauren A. Moskowitz (lmoskowitz@cravath.com)
825 Eighth Avenue
New York, New York  10019
Phone: (212) 474-1000
Fax: (212) 474-3700

*Attorneys for Defendants Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., and Credit Suisse Management LLC*