UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

FEDERAL DEPOSIT INSURANCE CORP.,
as receiver for CITIZENS NATIONAL
BANK and receiver for STRATEGIC
CAPITAL BANK,

      Plaintiff,

  -v-                                                  No. 12-CV-04000-LTS-KNF

CREDIT SUISSE FIRST BOSTON
MORTGAGE SECURITIES CORP.,
CREDIT SUISSE MANAGEMENT LLC,
CREDIT SUISSE SECURITIES (USA) LLC,
DEUTSCHE BANK SECURITIES INC.,
HSBC SECURITIES (USA) INC., RBS
SECURITIES INC., and UBS SECURITIES
LLC,

      Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

Plaintiff, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for both Citizens National Bank ("CNB") and Strategic Capital Bank ("SCB," and together with CNB, the "Banks"), brings this action pursuant to the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77a <u>et</u> <u>seq.</u>, against Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse Mortgage"), Credit Suisse Management LLC ("Credit Suisse Management"), Credit Suisse Securities (USA) LLC ("Credit Suisse Securities"), Deutsche Bank Securities Inc. ("DBS"), HSBC Securities (USA) Inc. ("HSBC"), RBS Securities Inc. ("RBS"), and UBS Securities LLC ("UBS") (collectively, "Defendants"), in connection with the issuance of certain certificates backed by collateral pools of residential mortgage loans. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Second Amended Complaint. (Docket Entry No. 172.) The Court has considered carefully the parties' submissions. For the reasons stated below, Defendants' motion is denied.

BACKGROUND

The Court presumes familiarity with the history of this dispute and the facts as detailed in the Court's March 24, 2015, Opinion and Order. (Docket Entry No. 135.) The following summary of facts is drawn from the Second Amended Complaint ("SAC," Docket Entry No. 166), the documents incorporated by reference therein, and other documents of which the Court may properly take judicial notice.

Between September 2007 and March 2008, Plaintiff's predecessors, CNB and SCB, purchased ten residential mortgage backed securities ("RMBS") certificates ("Certificates") that were either issued or underwritten by Defendants. Defendant Credit Suisse Management did not itself underwrite or issue any Certificates; rather, "through stock ownership, agency, or otherwise" Credit Suisse Management controlled Credit Suisse Mortgage, which issued two of the Certificates. (SAC ¶¶ 4, 7, 137.) The Certificates were backed by mortgage loans originated by IndyMac Bank F.S.B. ("IndyMac"), American Home Mortgage ("AHM"), GMAC Mortgage Corporation ("GMAC"), and Wachovia Mortgage Corporation ("Wachovia"), among others. (Id. at Schedules 1–3, 5, 7, 10–12 Item 28(a).) Plaintiff alleges that Defendants made untrue statements or omitted material facts about these mortgage loans in each Certificate's prospectus supplement. (SAC ¶¶ 1, 78–80.)

On May 22, 2009, the FDIC closed the Banks and placed them into receivership. Notwithstanding the existence of information reflecting problems with the RMBS market

generally, distribution reports issued by RMBS trustees reflecting early payment defaults ("EPDs"), and financial difficulties of certain loan originators, Plaintiff did not discover Defendants' false and misleading statements until 2011, after Plaintiff conducted a "forensic analysis of a random sample of the loans in each of the securitizations[,]" using vendor-provided data that was not available before May 22, 2008. (SAC ¶¶ 3, 115.)

D<span>ISCUSSION</span>

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's SAC. (See Docket Entry No. 172.) In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [it is] entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the plaintiff's claims. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).

Defendants assert that the SAC should be dismissed as time-barred, for failure to allege reliance, and as against certain Defendants that were not underwriters with respect to the

particular tranches of RMBS that the Banks purchased.  The Court addresses each of these contentions in turn.

Statute of Limitations

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks and emphasis omitted).  In deciding a motion to dismiss, the Court may "take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents[.]"  See id. (emphasis omitted).

Under Section 13 of the 1933 Act, a plaintiff's claims are time-barred if not "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence[.]"  15 U.S.C.S. § 77m (LexisNexis 2012).  Pursuant to the FDIC Extender Provision[1], Plaintiff's claims are timely unless the one-year statute of limitations period had already expired when the Banks entered receivership on May 22, 2009.  (See 12 U.S.C. §§ 1821(d)(14)(A)(ii)(I) and (B)(i).)

"The filing period commences when the plaintiff discovers (or should have discovered) the securities-law violation[;]" a "securities-law violation is discovered when the plaintiff learns sufficient information about [the violation] to . . . plead it in a complaint with enough detail and particularity to survive a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss."  Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.,

---

[1] The "FDIC Extender Provision" is a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, codified as 12 U.S.C. § 1821(d)(14).

873 F.3d 85, 119 (2d Cir. 2017) (internal quotation marks omitted). "Whether sufficient facts existed at [a particular] time is, by definition, a fact-intensive inquiry and, thus, generally ill-suited for resolution at the motion to dismiss stage." In re Bear Stearns Mortg. Pass-Through Certificates Litig., 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012).

In their Joint Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint ("Defs. Br.," Docket Entry No. 173), Defendants proffer four principal sources of information in support of their argument that Plaintiff had notice of its claims before May 22, 2008: (i) data concerning EPDs and "purportedly high rates of delinquencies in the securitizations[;]" (ii) lawsuits against IndyMac, an originator of loans backing certain securitizations at issue; (iii) negative reports and downgrades from ratings agencies; and (iv) negative news articles about the RMBS industry generally and about originators IndyMac, American Home, GMAC/Residential Capital, and Wachovia. (Defs. Br. at 11–20.)

The overwhelming majority of the information Defendants cite concerns "general, industry-wide practices that are not merely untethered to the transactions that are the subject of the [SAC], but are unconnected to any of the entities that were involved in the origination, packaging, and sale of the [Certificates]." In re Bear Stearns, 851 F. Supp. 2d at 764 (internal quotation marks omitted). Most of the news articles discuss trouble in the residential mortgage industry generally, or focus primarily on subprime loans, which are riskier than the Alt-A loans that Plaintiff asserts comprised the Certificates the Banks purchased. (See generally Frankel Declaration, Docket Entry No. 174; see also Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Pl. Br."), Docket Entry No. 177, at 20.) Without evidence of a more direct connection to the Certificates and the transactions

at issue here, the Court cannot conclude that this information put Plaintiff on notice of its claims. See Fed. Deposit Ins. Corp. v. Chase Mortg. Fin. Corp., 2013 WL 5434633 at *4 (S.D.N.Y. 2013) ("FDIC/Chase") (finding that negative publicity on the mortgage industry or similar securities to those at issue is insufficient where "none of that information is connected to the specific certificates or transactions at issue").

Defendants also point to three Certificates that were downgraded below investment grade on May 14, 2008, just days before the Banks entered receivership. Defendants argue that these downgrades should have put the Banks on notice of their claims before May 22, 2008, thus time-barring Plaintiff's claims. However, downgrades below investment grade do not, standing alone, reflect an underlying violation of securities law and may "occur for any number of reasons . . . that are unrelated to the problematic underwriting and quality control practices that form the basis of [the instant] complaint." In re Bear Stearns, 851 F. Supp. 2d at 766. For the reasons discussed above, the other information available to the Banks prior to May 22, 2008, was too attenuated from the transactions at issue to have put the Banks on notice of their claims. It is Defendants' "burden to prove that a reasonable investor . . . would have conducted a fulsome investigation and uncovered information sufficient to make out a plausible claim for relief by [the date on which the statute of limitations expired.]" Nomura, 873 F.3d at 122 (finding that defendants had failed to adduce evidence that a reasonable investor in plaintiff's shoes would have uncovered information sufficient to state a claim "just weeks after the credit downgrades"). Defendants have not sustained this burden, as they have provided no basis for the Court to conclude that, within eight days of the downgrades, the Banks would have conducted an investigation enabling them to uncover all the information necessary to plead their claims with sufficient particularity to survive a 12(b)(6) motion.

Defendants have failed to proffer "uncontroverted evidence irrefutably demonstrat[ing] [that the] plaintiff discovered or should have discovered facts sufficient to adequately plead a claim" prior to May 22, 2008.  In re Bear Stearns, 851 F. Supp. 2d at 763 (internal quotation marks omitted).  Therefore, Defendants' motion to dismiss Plaintiff's claims is denied insofar as it is based on the statute of limitations.

Presumption of Reliance

It is well settled that a plaintiff bringing Section 11 claims need not allege reliance.  See In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010).  However, the presumption of reliance dissipates "after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement[.]"  15 U.S.C.S. § 77k(a) (LexisNexis 2012).  Defendants contend that Plaintiff must plead reliance because (i) RMBS trustees issued monthly distribution reports concerning the loans underlying the Certificates, and (ii) those monthly distribution reports should be considered "earning statements" within the meaning of Section 11.

Defendants' motion to dismiss must be decided based on the face of Plaintiff's complaint.  Plaintiff is entitled to a presumption of reliance and is not required to plead its claims in a way that negates the applicability of the presumption.  Plaintiff does not mention monthly distribution reports in the SAC, and Defendants have proffered no basis for the Court to take judicial notice of those reports and analyze their content.  Therefore, the Court need not take up at this time the issue of whether the distribution reports were earnings reports within the meaning of the statute, and Defendants' motion is denied insofar as it seeks dismissal of the SAC for failure to plead reliance.

Participation in the Offerings

Liability under Section 11(a)(5) of the 1933 Act extends to anyone who "participate[s], directly or indirectly, in purchasing securities from an issuer with a view to distribution, in offering or selling securities for an issuer in connection with a distribution, or in the underwriting of such an offering." In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 177 (2d Cir. 2011).

Defendants contend that Plaintiff has failed to state a claim against Deutsche Bank and UBS because neither party was identified in the offering documents as an underwriter of the particular tranches of the RALI 2006-QS18, RAST 2006-A11, and RAST 2007-A1 securitizations that the Banks purchased. (Defs. Br. at 29–31.) However, Deutsche Bank and UBS are named as co-underwriters in the relevant prospectus supplements and, according to the SAC, Deutsche Bank and UBS endorsed alleged misstatements relating to asset pools backing the entire securitization. (See SAC Schedules 2, 3, and 10, Items 28(f), 37, 62, 68, 79, 106.) Furthermore, as co-underwriters of the securitizations, Deutsche Bank and UBS had a financial interest in the success of the offering as a whole, not just the specific tranches that they sold. Therefore, viewing the allegations and the documents incorporated by reference into the SAC in the light most favorable to the Plaintiff, the Court finds plausible Plaintiff's allegation that Deutsche Bank and UBS indirectly participated—as that statutory term has been interpreted in the applicable regulations and by the Second Circuit—in the relevant offerings, even if Deutsche Bank and UBS did not directly sell the particular tranches that Plaintiff purchased.

Control Person Liability

Defendants argue that Plaintiff has failed to plead sufficiently that Credit Suisse Management is liable as a "control person" of Credit Suisse Mortgage under Section 15 of the

1933 Act.  15 U.S.C. § 77o.  Control is defined for purposes of the statute as "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise."  <u>In re Lehman Bros.</u>, 650 F.3d at 185.

Here, Plaintiff has alleged adequately that Credit Suisse Management was a "controlling person" under Section 15 because (i) Plaintiff has stated a claim against Credit Suisse Mortgage for a primary violation, and (ii) Plaintiff alleges that "Credit Suisse Management, by or through stock ownership, agency, or otherwise, controlled [Credit Suisse Mortgage] within the meaning of Section 15 of the 1933 Act" and that Credit Suisse Mortgage "was a wholly-owned subsidiary of Credit Suisse Management during 2007 and 2008."  (SAC ¶¶ 137–38.)  These allegations are sufficient to support plausibly an inference that Credit Suisse Management had the "power to direct or cause the direction of the management and policies of" Credit Suisse Mortgage.  <u>In re Lehman Bros.</u>, 650 F.3d at 185; <u>see also</u> <u>FDIC/Chase</u>, 2013 WL 5434633 at *10 (finding allegations that "CitiMortgage, FHHLC, and JPMorgan by or through stock ownership, agency, or otherwise, controlled [CMSI, FHASI, and Chase, respectively] within the meaning of Section 15 of the 1933 Act" sufficient to state a Section 15 claim).  Therefore, Defendants' motion is denied insofar as it seeks dismissal of the SAC for failure to state a claim for control person liability.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint is denied in its entirety. This Memorandum Order resolves docket entry no. 172. This case remains referred to Magistrate Judge Fox for general pretrial management.

SO ORDERED.

Dated: New York, New York
October 18, 2019

     /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge